UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL NO. 08-00066-GFVT

KELLY FRANK MILLER                                                    PETITIONER


V.                          RECOMMENDED DISPOSITION


LARRY CHANDLER, WARDEN                                               RESPONDENT

*  *  *  *  *

Petitioner Kelly Frank Miller is an inmate housed at the Kentucky State Reformatory in LaGrange, Kentucky. *See* DE #1 Petition, at 1. He is currently serving a thirty-year sentence under a judgment, after conviction by jury trial in Perry Circuit Court, on three counts of first degree assault. *See id.* Petitioner simultaneously filed an appeal as of right and pursued state post-conviction relief under RCr. 11.42 and CR 60.02. The trial court stayed a decision on post-conviction relief until after the Supreme Court of Kentucky rendered its appellate decision. *See* DE #1-2 Supporting Memorandum, at 10. After state courts denied both direct and collateral avenues of relief, Miller timely filed the pending § 2254 Petition alleging insufficient evidence for conviction, improper jury instructions, prosecutorial misconduct, improper sentencing determination, and ineffective assistance of counsel. *See id.* at 11-34.

The District Judge referred the matter to the undersigned for a recommended disposition. Having received the response and records from Respondent Chandler and Petitioner's objections thereto, the matter is ripe for decision.

**I. The Record**

A. Background Information

On June 12, 1999, Petitioner shot three men in front of multiple witnesses at the Daniel Boone Bar in Perry County, Kentucky. *See* DE #7-7 Appellate Decision, at 1. The following persons were victims of the shooting: 1) Thomas Napier, who still has a bullet lodged between his shoulder and backbone; 2) Darrell Bowling, who is paralyzed from the waist down as a result of being shot in the back; and 3) Ben Gunsauley, who was shot in the wrist and had surgery to remove a "few" wrist bones. *See id.* at 2-3. The shootings occurred after Napier, a bouncer, escorted Petitioner out of the bar due to Miller's altercation with another patron. *See id.* at 1. Bowling also was a bouncer involved in quelling the fray. *See id.* at 2.

At the jury trial, the prosecution called all three victims and some eyewitnesses to testify. *See* DE #1-2 Supporting Memorandum, at 5-6. In addition to calling witnesses that testified to Miller's physical appearance after the altercation, the defense also called Dr. Eden Villa, Petitioner's physician, and Dr. Steven Simon, a licensed clinical psychologist. *See id.* at 7-8. Dr. Villa testified as to interactions with Miller and informed the jury of Miller's bipolar disorder. *See id.* When cross-examined by the prosecution, Dr. Villa indicated that Petitioner had improved before the June 12 shootings. *See* DE #7-7 Appellate Decision, at 6. Dr. Simon, who documented Miller's history of bipolar disorder, anxiety, and depression in a report, additionally diagnosed Miller with post-traumatic stress disorder and testified that he suffered from the disorder at the time of the shootings. *See* DE #1-2 Supporting Memorandum, at 8. However, on cross, Dr. Simon testified that "he could not say definitively that Miller was unable to conform his behavior to the requirements of law or to appreciate the criminality of his actions." *See* DE #7-7 Appellate Decision, at 6.

2

The jury ultimately found Petitioner guilty of three counts of first degree assault. *See id.* at 1. After a separate sentencing hearing, Miller received a thirty-year sentence of incarceration, with consecutive ten-year sentences on each count of assault. *See id.*

B. Appeal

Through counsel, Miller filed a direct appeal of his conviction in April 2004.[1] First, he stated that the first degree assault convictions against two of the three victims should be reversed and dismissed as based on insufficient evidence. While he conceded that the testimony of the paralyzed victim provided sufficient evidence of "serious physical injury" under the Kentucky assault statute, he argued that the respective testimony of the other two victims did not establish that each had suffered such an injury. *See* DE # 7-3 Appeal Memo, at 10. Therefore, according to Petitioner's argument, the trial court erred when it denied the defense motion for directed verdict.

Miller's second ground for appeal alleged that the trial court erred when it refused to direct a verdict of not guilty by reason of insanity, or in the alternative, to instruct the jury only on a charge of assault under extreme emotional disturbance rather than first degree assault. *See* DE #7-4 Appeal Memo, at 13. According to Petitioner, the defense met its burden of proof, and the prosecution failed to present rebuttal evidence. Therefore, Miller argued, the judge should not have left the questions of sanity or extreme emotional disturbance to the jury. Rather, the judge should have either entered a directed verdict of not guilty by reason of insanity or, at the least, directed a verdict of not guilty on first degree assault and submitted only the assault under extreme emotional disturbance. *See id.* at 15. Failure to do so purportedly constituted grounds for reversal.

---

[1]

The Commonwealth, in its response, countered all of Miller's arguments either on the merits or with reference to alleged lack of preservation. *See generally* DE #7-6 Appeal Response.

Thirdly, Petitioner argued that the trial judge's refusal to provide a jury instruction on an intoxication defense constituted grounds for reversal and a new trial. *See id.* at 20. In support, he argued that testimony indicating Miller rarely drank, had consumed four whiskeys on the night of the assaults, and was "stumbling and staggering" constituted substantial proof of intoxication. Thus, according to Miller, the judge should have instructed the jury on this defense. *See id.* at 19.

A fourth ground for appeal centered on several alleged instances of prosecutorial misconduct that occurred on cross-examination and in closing argument. According to Miller, the prosecutor engaged in misconduct in the following ways: 1) by asking the mental health expert witness about prejudicial and collateral issues, including questions about Miller's highest military rank and marijuana use; 2) by misrepresenting witness testimony in the closing argument; 3) by referencing Miller's marijuana use in the closing argument (even though the prosecutor withdrew the question upon defense counsel's objection during cross-examination); and 4) by referring to facts not in evidence regarding the continuing pain suffered by one of the victims. *See id.* at 20-23. Since the jury rejected the defense theories of insanity and extreme emotional disturbance despite the "strong case" presented, this conduct, in Petitioner's estimation, "could have tipped the balance to a guilty verdict," thereby necessitating an order for a new trial. *See id.* at 25.

Additionally, Miller alleged a separate instance of prosecutorial misconduct as necessitating a new penalty trial. Specifically, he argued that the prosecutor engaged in prejudicial conduct by referring to the petitioner as a "cancer" while asking the jury to set a standard for the community by sentencing Miller to a sixty-year term of imprisonment. *See id.* at 25. Defense counsel objected to the comment and moved for a mistrial, a motion the trial judge denied. *See id.* This denial, the petitioner argued, deprived him of a fair trial, thus entitling him to a new penalty trial. *See id.* at 26.

As a final ground, Petitioner argued that the trial court erred when it failed to credit 873 days of monitored home incarceration, reflecting bond conditions, toward his thirty-year prison sentence. *See id.* While noting the existence of a prior Kentucky decision stating that home incarceration is not custodial for sentencing purposes, Petitioner also pointed to another Kentucky case in which a state court found that home incarceration is custodial for purposes of an escape prosecution. *See id.* at 27. Due to this inconsistency, which Miller characterized as "irrational and arbitrary," Petitioner argued that the court should reconsider the contrary trial ruling and grant credit for the 873 days. *See id.*

The Supreme Court of Kentucky addressed every ground Miller asserted on appeal and ultimately affirmed his conviction and sentence. *See* DE #7-7 Appellate Decision, at 10. Even though the court found that Miller had not preserved the issue of sufficiency of the evidence to prove "serious physical injury," the court nevertheless addressed the merits of the claim. *See id.* at 3. Since Petitioner had raised the issue on a motion for directed verdict, the trial court could grant the motion only if it found "that a reasonable juror could not find the defendant guilty." *See id.* at 4. The Kentucky Supreme Court found evidence "ample to uphold the conviction," noting the following facts: 1) Miller shot both victims with a Smith and Wesson .38 revolver; 2) an ambulance transported both victims to the hospital; 3) a bullet remains lodged in the back of one of the victims; and 4) the other relevant victim's injury required surgery and the removal of several wrist bones. *See id.*

Additionally, the appellate court found that the trial judge did not err in denying the motion for directed verdict on the insanity claim. The court noted that Miller not only had the burden of proving the affirmative defense but also, because this claim arose in the context of a directed verdict

5

motion, an additional "very high burden" to show that "no reasonable juror could have concluded that he was sane at the time of the shooting." *See id.* at 5. Furthermore, the court stated that proof offered by Miller did not go "unchallenged" by the prosecutor, finding the following evidence sufficient "to create a question of fact for the jury" regarding sanity: 1) testimony from Miller's general practitioner noting improvement in Miller's mental state shortly before the night of the assaults; 2) the statement of the mental health expert on cross-examination that he could not definitely testify that Miller was "unable to conform his behavior . . . or to appreciate the criminality of his actions"; 3) Miller's account of the incident, as told to the mental health expert; and 4) the testimony of the witnesses and shooting victims. *See id.* at 6. As for the related claim for directed verdict based on extreme emotional disturbance, the court found that Miller did not preserve the issue for appeal; the court did not address the argument on the merits. *See id.* at 4-5.

The Kentucky Supreme Court also affirmed the trial judge's decision not to instruct the jury on a defense of voluntary intoxication. Since proof that Miller was "merely drunk" would not warrant the instruction, the court found that testimony indicating that Defendant was "stumbling and staggering" was insufficient "to require an instruction that the defendant was so inebriated as to make his actions unintentional." *See id.* at 6.

Addressing the issue of prosecutorial misconduct, the appellate court found that Miller failed to preserve most of the allegations. *See id.* However, after articulating the standard of review - "whether the defendant received a fundamentally fair trial" - the court did proceed to discuss the separate instances alleged in the appeal, ultimately finding no "prosecutorial misconduct warranting relief as palpable error." *See id.* at 7. Relatedly, the court also found that the prosecutor's sentencing comment – that Miller was a "cancer in the community" – did not create an unfair trial.

6

*See id.* at 8-9. While the court characterized this issue as Petitioner's "most compelling argument" and did disapprove of the comment, it found that the evidence of guilt was so overwhelming that Miller could not meet the burden of proving prejudice. Furthermore, the court found that the trial judge did not err by denying a motion for mistrial based upon the prosecutor asking the jury to set a "community standard" during sentencing. The court noted that the prosecutor merely was responding to a defense plea for leniency. *See id.* at 10.

Finally, the court found that Miller's argument to credit the 873 days of home incarceration toward his thirty-year sentence lacked merit. The court noted the continued validity of prior case law speaking to the issue, and held that the trial judge correctly denied credit under Kentucky law. *See id.*

C. Post-Conviction Relief

After pursuing an unsuccessful direct appeal, Petitioner sought post-conviction relief in Perry Circuit Court via a combined RCr 11.42 and CR 60.02 motion. The trial court conducted a hearing and subsequently denied the combined motion. *See* DE #7-10 Post-Conviction Memo, at A120; DE #7-12 Post-Conviction Appeal, at 2. On appeal, Petitioner alleged two grounds of ineffective assistance of counsel. *See* DE #7-10 Post-Conviction Memo, at 14, 22.

First, Petitioner argued that defense counsel rendered ineffective assistance by failing to develop more fully the defense of extreme emotional disturbance. *See id.* at 14. In support, Petitioner asserted that even though the jury received instructions on the defense, the jury remained "confused" and "lacked sufficient information to understand the mitigating effect" because counsel failed to call other experts to supplement and clarify mental health expert Dr. Simon's report and testimony. *See id.* at 17; *id.* at 16.

7

An additional allegation of ineffective assistance centered on counsel's decision not to seek the assistance of a defense mental health expert. *See id.* at 22. According to testimony given at the post-conviction evidentiary hearing, a defense mental health expert would have been able to explain the differences between insanity and extreme emotional disturbance and to advise counsel to focus on the latter defense in Miller's case. *See id.* Petitioner pointed to this testimony as support for the assertion that, by not retaining a defense mental health expert, counsel failed "to properly prepare and investigate the obvious mental health defenses." *See id.* at 23. Relatedly, Miller added that defense counsel's failure to request government funds to retain such an expert constituted ineffectiveness. *See id.*

The Kentucky Court of Appeals affirmed the trial court's denial of collateral relief. *See* DE #7-12 Post-Conviction Appeal, at 4. Applying the *Strickland* standard, the state court of appeals found that defense counsel offered "a significant mental health defense" that included testimony from two doctors and secured a jury instruction on extreme emotional disturbance. *See id.* at 3 (indicating that the court would not second-guess counsel's trial strategy).

Likewise, the court found no merit to Miller's second allegation of ineffective assistance. The court noted that both the psychologist (Dr. Simon) and Miller's treating physician (Dr. Villa) were available to answer any questions counsel may have had while preparing the defense. *See id.* Furthermore, the court stated that even though counsel could have requested funds to retain another mental health expert, the limited right to receive such funds required "a showing that the defendant's mental state is in serious question." *See id.* Accordingly, the court found that counsel did not err in failing to retain an additional mental health expert nor in failing to request funds for such retention. *See id.* at 4.

8

D. § 2254 Petition

Having exhausted state remedies, Petitioner timely filed a *pro se* motion for § 2254 habeas relief.  In his supporting memorandum and reply, Miller raises the same arguments presented in the state court proceedings, either on appeal or via post-conviction attack.  *See generally* DE #1-2 Supporting Memo; DE #9 Defendant's Traverse.  The Commonwealth responded to each ground, presenting arguments as to either the merits or a state procedural bar.  *See* DE #7 Response.  The case is ripe, and this Court addresses each ground presented, within the confines of proper habeas review.

**II. Standards of Review and Procedural Considerations**

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA" or "Act"), which amended 28 U.S.C. § 2254, established a "highly deferential standard for evaluating" state court decisions. *See Lindh v. Murphy*, 117 S. Ct. 2059, 2067 n.7 (1997); *see also Bell v. Cone*, 125 S. Ct. 847, 853 (2005). Specifically, the Act states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" and "unreasonable application" clauses of subsection (1) have independent meaning; thus, § 2254(d)(1) establishes "two categories of cases" permitting federal courts to grant habeas relief to state prisoners.  *See Williams v. Taylor*, 120 S. Ct. 1495, 1519 (2000); *Bell v. Cone*,

9

122 S. Ct. 1843, 1850 (2002).  Petitioner must "demonstrate that his case satisfies the condition set by § 2254(d)(1)."  *See Williams*, 120 S.Ct. at 1518.  The "contrary to" language refers to either the state court's application of a contradictory rule vis-a-vis Supreme Court precedent or the state court's arrival at a different conclusion despite the presence of "materially indistinguishable" facts, vis-a-vis such precedent.  *See id.* at 1523. By contrast, the "unreasonable application" language refers to a situation in which "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *See id.*; *see also Foley v. Parker*, 488 F.3d 377, 382 (6th Cir. 2007).

Because the pending § 2254 petition sets forth, at least in part, ineffective assistance of counsel claims, the case falls under the "unreasonable application" category.[2] The "unreasonable application" provision of § 2254(d)(1) does not permit a federal court to grant habeas relief "because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *See Williams*, 120 S. Ct. at 1522. Rather, the inquiry centers upon a determination of whether the state's application was "objectively unreasonable." *Id.* at 1521; *see also Bell*, 122 S. Ct. at 1850 ("[A]n unreasonable application is different from an incorrect one.").  Furthermore, § 2254(d) requires that the state court unreasonably apply "*clearly established* Federal law," *see* 28 U.S.C. § 2254(d)(emphasis added), which consists

---

[2]

Whether Petitioner received ineffective assistance of counsel presents a mixed question of law and fact.  *See Strickland v. Washington*, 104 S.Ct. 2052, 2070 (1984); *Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000).  In accordance with Sixth Circuit precedent, such mixed questions fall under the "unreasonable application" category of § 2254(d)(1). *See Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003).

of "the holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." *See Williams*, 120 S. Ct. at 1523.[3]

In addition to the limitations of § 2254(d), AEDPA also provides that "a determination of a factual issue made by a State court shall be presumed to be correct." *See* 28 U.S.C. § 2254(e)(1). In order to overcome this presumption, a petitioner must rebut the presumption "by clear and convincing evidence." *See id.* The "presumption of correctness" requires this Court to give appropriate deference to state court findings of fact. *See Carter v. Bell*, 218 F.3d 581, 590-91 (6th Cir. 2000)(noting that the amended AEDPA standard requires greater deference to state courts). Findings of fact entitled to the presumption include "[p]rimary or historical facts found by state courts," *see Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), as well as factual findings made by state appellate courts based upon the trial record. *See Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003)(citing *Sumner v. Mata*, 101 S. Ct. 764, 769 (1981)).

Significantly, the aforementioned presumption does not fully apply when, as with an ineffective assistance claim resolved on the merits, the § 2254 petition involves mixed questions of law and fact. *See Strickland*, 104 S. Ct. at 2070; *see also Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007)("'[T]he performance and prejudice components of the effectiveness inquiry are mixed questions of law and fact.' They are thus not . . . subject to the Section 2254(e)(1) presumption of correctness for state court factual findings.")(citations omitted). However, while federal courts need not defer to ultimate findings regarding the performance and/or prejudice prongs

---

[3]

Petitioner's ineffective assistance of counsel claims fall under clearly established legal principles announced by the Supreme Court. However, lower federal court decisions may be examined "not as binding precedent, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court." *See Foley*, 488 F.3d at 382 (citing *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003)).

11

of the effectiveness analysis, the "underlying facts" supporting such state court decisions warrant deference. *See, e.g., Strickland*, 104 S. Ct. at 2070 (requiring deference as to underlying facts); *Abdur'Rahman v. Bell*, 226 F.3d 696, 702 (6th Cir. 2000)(holding, per *Strickland*, that "state post-conviction trial court's findings of fact underlying its ineffectiveness inquiry should have been presumed correct" under § 2254 (d)); *Brooks v. Bobby*, No. 1:02CV1416, 2006 WL 2456494, at *13 n.3 (N.D. Ohio Aug. 22, 2006)("Although the Court need not defer to the ultimate findings on whether counsel provided ineffective assistance, as to underlying facts, such as the factual nature of evidence and the conduct of counsel, deference to the state court findings is still warranted so long as support exists in the record.").

**III. Analysis**

Petitioner offers five separate theories in support of his request for § 2254 relief. First, Miller argues that the State presented insufficient evidence in its attempt to prove infliction of "serious physical injury." *See* Supporting Memorandum, at 11. Petitioner also challenges the sufficiency of evidence regarding the defense arguments of insanity and extreme emotional disturbance. *See id.* at 14. Second, Petitioner contends that the trial court erred by refusing to instruct the jury on intoxication as a defense. *See id.* at 19. Third, Miller additionally sets forth a number of comments made in the course of the trial and/or sentencing proceedings that he argues amounted to prosecutorial misconduct. *See id.* at 21, 28. Fourth, he argues that the state erred by failing to credit the 873 days of monitored home incarceration toward his thirty-year sentence. *See id.* at 31. Fifth, and finally, Petitioner argues that counsel provided ineffective assistance by failing to develop fully the extreme emotional distress argument, by failing to obtain assistance from a

defense mental health expert, and by failing to request funds from the state to retain such an expert. *See id.* at 37, 41-42.

A. Sufficiency of Evidence

In his § 2254 petition, Miller asserts that the trial court erred when it refused to grant his motion for a directed verdict. According to Petitioner, the prosecutor failed to present sufficient evidence that two of the three victims suffered a serious physical injury, as defined by Kentucky law and required for a conviction of first degree assault. Additionally, Petitioner cites as error the failure of the trial court to grant a directed verdict based either on insanity or extreme emotional disturbance. Such an error is a ground for relief, he argues, because the defense presented sufficient evidence to prove that, at the time of the shootings, Petitioner acted under extreme emotional disturbance or was insane. As to all claims regarding sufficiency of the evidence, the Court finds that Miller is not entitled to habeas relief.

1. "Serious Physical Injury" Element

As previously noted, the jury found Petitioner guilty on three counts of first degree assault. Kentucky law includes as first degree assault "intentionally caus[ing] serious physical injury to another person by means of a deadly weapon or a dangerous instrument." *See* KRS § 508.010(1)(a). A related statute specifically defines "serious physical injury" as a "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." *See* KRS § 500.080(15).

The Due Process Clause of the Fourteenth Amendment requires the state, in a criminal case, to prove "beyond a reasonable doubt . . . every fact necessary to constitute the crime with which he

[the defendant] is charged." *See In re Winship*, 90 S. Ct. 1068, 1073 (1970). Under this standard, a criminal conviction must rest on sufficient evidence, thereby requiring "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *See Jackson v. Virginia*, 99 S. Ct. 2781, 2787 (1979). When asked to review sufficiency via a § 2254 petition, a court must "view[] the evidence in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See id.* at 2789 (emphasis original). Stated another way, a court will grant habeas relief only if it finds that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *See id.* at 2791-2792.

In the state habeas context, the court's role is to "determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that [defendant] committed the essential element of the crimes charged beyond a reasonable doubt." *See Saxton v. Sheets*, 547 F.3d 597, 601-02 (6th Cir. 2008)(quotation omitted). Importantly, the court tests for evidentiary sufficiency "under *Jackson*" and then, only upon a finding of insufficiency, "must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable.'" *See id.* at 602. *Jackson*'s standard applies "with explicit reference to the criminal offense as defined by state law." *See id.* at 606 (quoting *York v. Tate*, 858 F.2d 322, 327 (6th Cir. 1988)). The assessment of unreasonableness also implicates AEDPA's requirement of deference to state court factual findings. *See id.* at 607 (noting burden on petitioner to "rebut presumption of correctness with clear and convincing evidence").

The Court finds that a rational juror could have found Petitioner guilty of three counts of first degree assault beyond a reasonable doubt. According to the record, Miller shot all three victims

with a .38 revolver.  The two victims in question traveled by ambulance to the hospital, where one of the victims (Gunsauley) underwent surgery to remove several bones from his wrist.  The other victim (Napier) still has a bullet lodged in his back.  *See* DE #7-7 Appellate Decision, at 4.

Under Kentucky law, a gunshot wound is not automatically a "serious physical injury."  *See, e.g., Luttrell v. Commonwealth*, 554 S.W.2d 75, 78-79 (Ky. 1977)(rejecting application of statute where victim suffered "superficial" wounds from discharge "loaded with bird shot"); *Cf. Davis v. Commonwealth*, No. 2004-SC-000199-MR, 2005 WL 1185127, at *1-2 (Ky. May 19, 2005)(noting that wound in shoulder by .38 qualified, where proof of nerve damage and continuing pain in victim was submitted, and further confirming no need for expert medical proof).  Here, however, Miller not only shot the victims with a .38, each victim suffered a permanent injury as a result. [Of course, the weapon and ammunition were powerful enough to cripple permanently the third victim.]  Both victims required transportation to a hospital.  Napier has carried the bullet in his back for nearly a decade, and Gunsauley lost bones in his wrist as a result of post-assault surgery.  Miller attempts to undercut the Kentucky Supreme Court's finding, but he offers no clear and convincing basis for disagreeing with that court's factual assessment.  Sufficient evidence supports the verdict, and the Kentucky Supreme Court applied the correct standard in a reasonable way.  Miller is not entitled to relief on this theory.

### 2. Extreme Emotional Disturbance and Insanity

Petitioner also argues that he presented sufficient evidence to warrant a directed verdict based on defenses of extreme emotional disturbance[4] or insanity.  Thus, according to his argument,

---

[4]

Proof that a defendant acted under extreme emotional disturbance serves to mitigate assault in the first degree.  *See* KRS § 508.040.  Kentucky law defines extreme emotional disturbance as follows: "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's

the trial judge's failure to grant a directed verdict in favor of Petitioner requires § 2254 relief. However, the Kentucky Supreme Court dismissed the extreme emotional disturbance argument on appeal, finding that Miller had failed to preserve the issue.[5]  Specifically, the court found that, at trial, defense counsel moved for a directed verdict in vague terms at the close of the prosecution's case-in-chief and renewed the motion at the end of the defense's proof *only* as to the insanity defense.  *See* DE #7-7 Appellate Decision, at 4-5.  The state supreme court did not address the merits of this issue, and Respondent asserts procedural default as to this § 2254 argument.  *See* DE #7 Response, at 8-10.

When presented with procedurally defaulted claims, a court "will not consider the merits . . . unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice."  *See Williams v. Anderson*, 460 F.3d 789, 805-06 (6th Cir. 2006).  Significantly, for Miller's petition,

> [w]hen the state procedural rule prevents the state court from hearing the merits of the claim, procedural default occurs when 1) a petitioner failed to comply with the

---

judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes."  *See Thomas v. Commonwealth*, 170 S.W.3d 343, 347 (Ky. 2005)(quoting *McClellan v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986)(also noting that extreme emotional disturbance is "not a mental disease in itself").  The extreme emotional disturbance must result from "a reasonable explanation or excuse," with reasonableness "determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be."  *See* KRS § 507.020(1)(a).

[5]

Under Kentucky law, "[a] motion for a directed verdict made at the close of the [Commonwealth's] case is not sufficient to preserve error unless renewed at the close of all the evidence[.]" *See Kimbrough v. Commonwealth*, 550 S.W.2d 525, 529 (Ky. 1977); *see also Baker v. Commonwealth*, 973 S.W.2d 54, 55 (Ky. 1998)(affirming the continued validity of *Kimbrough*); *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky. 2003)("It is black-letter law that, in order to preserve an insufficiency-of-the-evidence allegation for appellate review, '[a] defendant must renew his motion for a directed verdict, thus allowing the trial court the opportunity to pass on the issue in light of all the evidence[.]'" (quoting *Baker*, 973 S.W.2d at 55)).

rule, 2) the state actually enforced the rule against the petitioner, and 3) the rule is an "adequate and independent" state ground foreclosing review of a federal constitutional claim.

*See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (noting that a "[f]ailure to comply with well-established and normally enforced procedural rules usually constitutes 'adequate and independent' state grounds for foreclosing review"); *see also Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001)(noting that the Sixth Circuit treats "a state appellate court's review for plain error as the enforcement of a procedural default")(citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)).

Petitioner procedurally defaulted his claim premised on denial of a directed verdict related to extreme emotional disturbance. Per the Kentucky Supreme Court, Miller failed to renew a motion for directed verdict based on extreme emotional disturbance. *See* DE #7-7 Appellate Decision, at 4. After noting this procedural deficiency, the court did not address the merits, but rather declared the claim to be unpreserved. *See id.* at 4-5. Moreover, the court's decision to address only the preserved claim for a directed verdict – one based on insanity – indicates that the court "actually enforced" that procedural rule. Despite notice, Miller has not attempted to excuse the default by demonstrating cause and prejudice or any other exception to application of procedural default. Therefore, the Court finds, without addressing the merits, that Miller is not entitled to § 2254 relief on this ground due to procedural default.

With respect to the insanity argument, Kentucky law defines "insanity" as follows: "as a result of mental condition, lack of substantial capacity either to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law." *See* KRS § 504.060(5). When offering insanity as a defense, the defendant bears the burden of proof, and the Commonwealth need

not disprove any element of the defense "unless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal." *See* KRS § 500.070(1); *see also* KRS § 504.020(3).

Petitioner argues that the trial court erred by not entering a directed verdict on the insanity defense. On appeal, Miller argued that the prosecution's failure to challenge the evidence of insanity introduced by the defense allowed Miller to reach the "high burden" of review for a denied directed verdict, namely, "that no reasonable juror could have concluded that he was sane at the time of the shooting." *See* DE #7-7 Appellate Decision, at 5 (citing *Port v. Commonwealth*, 906 S.W.2d 327, 330 (Ky. 1995)). The Kentucky Supreme Court disagreed and found that the prosecution submitted enough evidence to create a question for the jury regarding Miller's sanity at the time of the shootings. *See id.* at 5-6.

The Court finds that the Kentucky Supreme Court's conclusion was reasonable. According to the record, Petitioner offered the testimony of two medical experts familiar with Miller's mental health history to support an insanity defense. Even though the prosecutor did not call a competing expert witness, the state presented testimony from the three victims and witnesses to the shooting as to the events of the night in question. Miller obviously could identify his intended victims and differentiate them in a crowd. He acted in a manner suggestive of self-control as to his decisions, poor though they were. Additionally, on cross-examination, one of the defense experts (Dr. Simon) "could not say definitively that Miller was unable to conform his behavior to the requirements of the law or to appreciate the criminality of his actions." *See id.* at 6. Dr. Simon also recounted Petitioner's particular memory of the shootings. Dr. Villa depicted Miller as improved prior to the shootings. Taken together, this information presented enough of a question that a rational juror

18

could have found Miller to be sane at the time of the shootings.  The Kentucky high court so found, and this Court defers to that rational assessment.  Therefore, Miller is not entitled to habeas relief on this basis.

B. Jury Instruction

According to the Supreme Court, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  *See Mathews v. United States*, 108 S. Ct. 883, 887 (1988).  In the habeas context, "[a] claim that a trial court failed to give a jury instruction is not cognizable . . . unless the omission 'so infected the entire trial that the resulting conviction violates due process.'"  *See Hudson v. Berghuis*, 174 F. App'x 948, 955 (6th Cir. 2006)(quoting *Henderson v. Kibbe*, 97 S. Ct. 1730, 1737 (1977)).  Significantly for Petitioner's case, a trial judge's "failure to give a defense instruction 'does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction.'"  *See Grimes v. Wells*, No. 91-1532, 1991 WL 270830, at *3 (Dec. 17, 1991)(quoting *Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988)).

Under Kentucky law, voluntary "[i]ntoxication is a defense to a criminal charge only if such condition . . . [n]egatives the existence of an element of the offense[.]" *See* KRS § 501.080(1). Furthermore, in order to receive a jury instruction, a defendant must provide "evidence reasonably sufficient to support a doubt that the defendant knew what he was doing"; evidence of "mere drunkenness" is not enough.  *See Jewell v. Commonwealth*, 549 S.W.2d 807, 812 (Ky. 1977) (partially reversed on other grounds); *see also Rogers v. Commonwealth*, 86 S.W.3d 29, 44 (Ky. 2002)("A voluntary intoxication instruction is justified only when there is evidence that the

defendant 'was so drunk that he did not know what he was doing,' or when the intoxication 'negatives the existence of an element of the offense.'"(citations omitted)).

When undertaking habeas review of a state criminal conviction, the Court will not "reexamine state-court determinations on state-law questions." *See Estelle v. McGuire*, 112 S. Ct. 475, 480 (1991)("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Instead, the Court will defer to the state court's application of state law unless the application was "so fundamentally unfair as to violate the petitioner's due process rights." *See Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001)(citing *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).

In his petition for § 2254 relief, Miller reasserts the appellate argument that the trial judge erred in refusing to instruct the jury on an intoxication defense. According to a review of the record, witness testimony indicated that Miller rarely drank alcohol, had consumed four whiskey-based mixed drinks the night of the shootings, and was "stumbling and staggering." The Kentucky Supreme Court characterized this showing as "mere drunkenness" rather than proof that Petitioner acted in an unintentional manner. The state appellate court affirmed the decision of the trial judge.

This Court finds that the state courts appropriately resolved the question and did not act in a "fundamentally unfair" manner. As noted above, a trial judge does not violate due process by refusing to instruct a jury on a defense supported only by insufficient evidence. Kentucky law governing the intoxication defense sets a high evidentiary bar, and Miller's actions fairly indicate that he knew exactly what he was doing on the night in question. According to the record, Miller was able to walk to his vehicle, retrieve his firearm, and return to the crowded bar where he specifically targeted the two bouncers who had expelled him and another patron. Though perhaps

20

impaired, Miller remained in full control of his faculties.   The record supports the state courts' findings, and the trial court did not err in omitting a voluntary intoxication instruction.   Petitioner is not entitled to § 2254 relief on this basis.

C. Prosecutorial Misconduct

In order to prevail on a claim of prosecutorial misconduct, Petitioner cannot merely demonstrate "that the prosecutor['s] remarks were undesirable or even universally condemned." *See Darden v. Wainwright*, 106 S. Ct. 2464, 2471 (1986)(quotation omitted).   Rather, a reviewing court must determine "whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   *See id*. (quoting *Donnelly v. DeChristoforo*, 94 S. Ct. 1868, 1871 (1974)).   Such a due process violation occurs when the prosecutor's statement is "'so pronounced and persistent that it permeates the entire atmosphere of the trial' or 'so gross as probably to prejudice the defendant.'"   *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

Petitioner asserts that the prosecutor deprived him of a fair trial by asking questions of defense expert Dr. Simon, on cross-examination, regarding Miller's military rank and Miller's marijuana use. *See* DE #1-2 Supporting Memorandum, at 21-22.   He also asserts that prejudicial misconduct occurred when the prosecutor "misrepresented" witness testimony during closing argument and when the prosecutor, during the sentencing phase, referred to Miller as a "cancer." *See id.* at 21-22, 28.

The Kentucky Supreme Court addressed each of these statements on appeal, finding that none of the statements amounted to deprivation of a "fundamentally fair trial."   *See* DE #7-7 Appellate Decision, at 7-9.   The Court finds that the Kentucky Supreme Court, in reaching its

conclusion, did not misapply clearly established federal law. As the state court noted, the prosecutor withdrew, upon defense objection, the two questions on Miller's military rank and marijuana use. Even though the jury heard the questions, the trial judge found the issue of military rank to be a collateral issue, and the jury had already heard evidence of Petitioner's marijuana use, from a distinct source, at the time of the prosecutor's question. Thus, as the state court determined under appropriate precedent, neither of these issues undermined the fundamental fairness of the proceeding.[6]

As for the "misrepresentations" of Dr. Simon's testimony on cross-examination and in closing arguments, the state supreme court properly noted that the prosecutor was merely challenging the overt defense notion that Petitioner was insane at the time of the shootings. Because the prosecutor was "entitled to delve into the issue [of Miller's insanity] more thoroughly" once the witness "became somewhat evasive on the crucial question of whether Miller met the legal criteria for insanity," the prosecutor's questions were not fundamentally unfair. *See id.* at 8. Surely, such close questioning is the essence of cross-examination.

Finally, the Court agrees that the prosecutor's sentencing characterization of Petitioner as a "cancer" that the jury needed to eradicate with a strong jail sentence constitutes "Miller's most compelling argument that error was committed at his trial." *See id.* However, examining the trial and sentencing proceeding in their entirety, the Court finds that the comment (as well as the call to set a community standard) was not prejudicial. The jury had heard eyewitness and victim testimony

---

[6]

Because counsel did not object to the referenced marijuana use during closing, the Kentucky Supreme Court treated the matter as not preserved. *See* DE #7-7 Appellate Decision, at 7. As explained in the context of the directed verdict motion, that procedural disposition bars review under § 2254, and Miller does not attempt to justify relief from procedural default rules.

22

strongly establishing Miller's guilt.  Additionally, by finding him guilty on three counts of first degree assault, the jury decided that Petitioner's alleged mental health condition did not mitigate his culpability for the shootings.  With this evidence, no reason exists to believe that the prosecutor's comments affected the sentence.  The community standard remark directly answered the defense call for leniency.  Thus, even though the prosecutor's comments were strong, they did not undermine the overall fairness of the trial or sentencing result.

In sum, Miller is not entitled to § 2254 relief on the basis of prosecutorial conduct.[7]

D. Sentencing Issue

Petitioner asserts that the trial court denied him due process by not crediting the 873 days of pre-trial home incarceration toward his thirty-year sentence.  *See* DE #1-2 Supporting Memorandum, at 31.  Miller presented this argument on appeal, and the Kentucky Supreme Court found that it lacked merit.  Specifically, the court found that the trial court judge correctly applied state law, which did not afford credit for time served in home incarceration when, as in Miller's case, such incarceration was a form of pretrial release.  *See* DE # 7-7 Appellate Decision, at 10.

To reiterate, the Court, when undertaking habeas review, will not "reexamine state-court determinations on state-law questions."  *See Estelle*, 112 S. Ct. at 480.  Rather, the Court will defer unless the state court applied state law in a "fundamentally unfair" manner.  *See Coleman*, 244 F.3d at 542.  By arguing that the Kentucky Supreme Court should have applied different case law to his case, Petitioner asks this Court to revisit the Kentucky Supreme Court's state-law ruling.  Since

---

[7]

Again, this Court cannot address items Miller seeks to complain about from the closing argument that he did not preserve for Kentucky Supreme Court review.  Those items – including remarks the prosecutor allegedly made referencing issues not in evidence – are procedurally defaulted and provide no avenue for relief.

23

Miller has not shown that the state court decision was, in a constitutional sense, "fundamentally unfair," the Court finds that § 2254 offers no relief on this ground.

E. Ineffective Assistance of Counsel

When asserting a claim of ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice. *See Strickland*, 104 S. Ct. at 2064. In order to prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *See id.* A petitioner meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *See id.* at 2064-2065. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *See id.* at 2064. In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 2068. When evaluating prejudice, courts must take into consideration the "totality of the evidence before the judge or jury." *See id.* at 2069.

As previously noted, federal courts need not defer to ultimate findings regarding the performance and/or prejudice prongs of the effectiveness analysis; however the "underlying facts" supporting such state court decisions warrant deference. *See, e.g., Strickland*, 104 S. Ct. at 2070

24

(requiring deference as to underlying facts). Therefore, the Court will conduct its analysis in accordance with the *Strickland* standard and AEDPA comity principles.

Petitioner alleges two grounds of ineffective assistance of counsel: 1) failure to develop adequately the extreme emotional disturbance defense; and 2) failure to retain and to request funding to retain a defense mental health expert. *See* DE #1-2 Supporting Memorandum, at 37, 42. As in state court, Miller points to testimony from the RCr. 11.42 hearing that indicated a defense of extreme emotional disturbance, rather than insanity, best addressed the facts of Miller's case. *See id.* at 39. Additionally, Petitioner responds to the state appellate decision, arguing that he did not receive a fundamentally fair trial because the jury had not understood fully the defense of extreme emotional disturbance. Furthermore, Miller contends that the court of appeals erred in deferring to counsel's trial strategy because failure "to fully develop a viable, and most vital, defense" does not constitute "trial strategy." *See id.* at 41.

Like the state appellate court, the Court finds that defense counsel was not ineffective in his approach to presenting the defense of extreme emotional disturbance. Defense counsel called two doctors – Petitioner's own physician and a licensed clinical psychologist – to testify as to Miller's mental health history and his diagnoses of bipolar disorder, anxiety, depression, and post-traumatic stress disorder. *See* DE #7-12 Post-Conviction Appeal, at 3. Additionally, defense counsel ensured that the jury received an instruction on extreme emotional disturbance and assessed the potential resultant effect on Petitioner's liability. *See id.* The decision not to call any other medical witnesses, and the jury's determination that Miller was guilty of first degree assault, do not undercut the reasonableness of defense counsel's trial strategy. Defense counsel acted reasonably under the circumstances, and the Court will not second-guess counsel's otherwise adequate witness list.

Because counsel acted reasonably in pursuit of his trial strategy, Petitioner has failed to show deficient performance.

The Court likewise finds that counsel was not ineffective for failure to retain an additional expert or to request funds for that purpose.  As noted above, counsel had the assistance of two medical experts – Dr. Simon and Dr. Villa – in preparing for Miller's mental health-related defenses. Even though Petitioner points to the testimony from his post-conviction proceedings that indicates the possible value of a separate mental health expert's assistance, counsel's failure to consult another mental health professional does not establish a claim under *Strickland*.  Furthermore, counsel's decision not to request funds to retain a defense mental health expert was not unreasonable given the other available proof and the limited circumstances under which the state provides those funds. *See* DE #7-12 Post Conviction Appeal, at 3-4.  Miller faced three charges of first degree assault, and defense counsel's decision to pursue both insanity and extreme emotional disturbance defenses was not an unreasonable trial strategy.  The Court must point out that Miller seeks habeas relief, in part, by arguing that no reasonable juror could have rejected the defense theories of insanity or extreme emotional disturbance.  To quote: "There was an abundance of evidence offered to the jury by both sides that would have supported a finding that Miller was not guilty by reason of insanity, or of reduced charges based upon a finding that Miller was suffering from extreme emotional disturbance at the time of the shootings."  *See* DE #9 Defendant's Traverse, at 23; *see id.* at 5 ("There had been overwhelming evidence, and claims that Miller was suffering from extreme emotional disturbance, when he shot [the victims] . . ."). Miller cannot credibly maintain that counsel presented "abundant" or "overwhelming" evidence and then, pages later, argue that his counsel failed, by a constitutional margin, to present enough evidence.  Petitioner's argument related to *Strickland* is unavailing.  The

state courts applied the correct legal standards in a reasonable fashion, and the Court thus defers to the state decision, finding no ground for relief.

## IV. Certificate of Appealability

A Certificate of Appealability may issue where a habeas petitioner has made a "substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  This requires a petitioner to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000).  The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

Petitioner has not made a "substantial showing" as to any claimed denial of rights.  The Court believes its determination on the merits is not debatable.  None of the claims presents a close issue involving a violation or unreasonable application of clearly established federal law, or any other avenue of relief under § 2254.  As such, Miller is not entitled to a Certificate of Appealability.

## V. Recommendation

For all of the reasons stated in this decision, the Court RECOMMENDS that:

1) the District Court DENY, with prejudice, Miller's petition for § 2254 relief; and

2) the District Court wholly refuse a Certificate of Appealability, if requested by Miller.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also*

Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b).  Within ten days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466, 474-75 (1985).

This the 20th day of February, 2009.

Signed By:

**Robert E. Wier**

**United States Magistrate Judge**